## AFFIDAVIT OF TYLER J. SACKETT IN SUPPORT OF
## APPLICATIONS FOR SEARCH WARRANTS

I, Tyler J. Sackett, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since September 2018.  I am currently assigned to the Boston Field Office, Lowell Resident Agency, Merrimack Valley Transnational Organized Crime Task Force.  I am assigned to work criminal matters to include investigations focused on transnational organized crime, threats to life, violent gangs, drug trafficking, and violent crimes against children.  I attended the FBI Academy in Quantico, Virginia for approximately six months, where I received extensive training in the area of federal criminal and constitutional law, investigative methods, and evidence collection.

2.      As an FBI Special Agent, I am authorized to investigate violations of the laws of the United States, including violations of federal narcotics laws in Title 21 of the United States Code.  I am familiar with the manner and means commonly employed by drug traffickers, including those employed to avoid detection by law enforcement.  I am also familiar with the terminology and slang commonly employed by drug traffickers.  In my training and experience, I have observed and examined cocaine, cocaine base ("crack"), heroin, fentanyl, methamphetamine, oxycodone, and other controlled substances that are, by themselves, illegal to possess.  I am aware of the prices commonly charged on the street for these substances, the method of packaging, and the jargon used in their trade.

3.      I have participated in various aspects of drug-related investigations.  I have participated in controlled purchases of controlled substances utilizing confidential sources and undercover law enforcement agents and officers.  I have prepared affidavits in support of

applications for criminal complaints, search warrants, and/or arrest warrants. I have also conducted and coordinated electronic and physical surveillance of individuals involved in the illegal distribution of controlled substances.

4. Through my training and experience, I have become familiar with the manner in which narcotics traffickers smuggle, transport, store, and distribute narcotics, as well as how they collect and launder drug proceeds. I am familiar with the manners and methods by which narcotics trafficker's package and prepare narcotics for transportation and distribution, their methods of operation, and security measures which are often employed by narcotics traffickers to avoid vulnerability to law enforcement and to other drug dealers who might attempt to steal their narcotics, their profits, and/or their customers. I am also familiar with the manner in which narcotics traffickers use telephones, cellular telephone technology, coded communications or slang-filled telephone conversations, false or fictitious identities, and other means to facilitate their illegal activities and thwart law enforcement investigations.

5. Based on my training and experience, I am also familiar with the manner in which narcotics traffickers smuggle, transport, store, and distribute narcotics, as well as how they collect and launder drug proceeds. Based on my training and experience, I am familiar with narcotics traffickers' methods of operation, including methods used by them to distribute, store, and transport narcotics and to collect, expend, account for, transport, and launder drug proceeds. I am also familiar with the manner in which narcotics traffickers use personal, borrowed, and rented cars and trucks, common carriers, mail and private delivery services, and a variety of other motor vehicles to: (a) meet with co-conspirators, customers and suppliers; (b) transport, distribute, and purchase narcotics; (c) transport funds used to purchase narcotics; and (d) transport the proceeds of narcotics transactions. I am aware that drug traffickers often transport drugs and drug proceeds in motor vehicles, and that drug traffickers often use their vehicles to

meet with other co-conspirators, including their sources of supply and/or their drug customers, and to travel to and from the residences of co-conspirators and storage sites for drugs and drug proceeds. Drug traffickers also use their vehicles to go to banks and other financial institutions to deposit drug proceeds and/or transfer funds to purchase drugs. Experienced drug traffickers will often engage in counter-surveillance maneuvers while driving an automobile in an attempt both to determine whether they are being followed by law enforcement and to evade any law enforcement officers who may be conducting surveillance. I am also aware, from my training and experience, that drug traffickers often install and use electronically operated hidden compartments in motor vehicles to conceal large quantities of drugs and drug proceeds.

6. More broadly, based upon my training and experience, I know that tracking drug traffickers (in motor vehicles and otherwise) frequently leads to evidence of narcotics and money laundering offenses, including, but not limited to: (a) the identification of potential criminal associates, such as criminal co-conspirators, suppliers of illegal narcotics, and money launderers; (b) the identification of physical locations at which illegal drugs are offloaded, stored, and/or distributed, including residences, businesses, commercial storage facilities, warehouses, and ports; and/or (c) the identification of locations where drug proceeds are stored, deposited, concealed, used in monetary and financial transactions and laundered, including private businesses, banks, wire-remitter businesses, and other financial institutions.

7. The conclusions and opinions set forth below are based on my experience and training, my participation in this investigation, and conversations with other law enforcement officers who are familiar with the facts and circumstances of this investigation. Throughout this Affidavit, statements that "I know" and "I believe" certain facts are based upon this combination.

**REQUEST FOR ISSUANCE OF WARRANTS**

7. As a Special Agent with the FBI, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), and I am authorized to make these applications. I submit this affidavit in support of applications for search warrants under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the telephone assigned number 207-860-0414 ("**Target Mobile Phone 1**"), and the telephone assigned number 207-860-0625 ("**Target Mobile Phone 2**") (collectively, the "**Target Mobile Phones**"). The listed subscribers of service for the telephones are the same: "Joseph R. Bagrowski", at 204 Acropolis Road, Lowell, Massachusetts. For reasons set forth herein, I believe that Joseph BAGROWKSI ("BAGROWSKI") is the current user of the **Target Mobile Phones**. The service provider for the **Target Mobile Phones** is Verizon Wireless ("Verizon"), a wireless telephone service provider that accepts service of process at 180 Washington Valley Road, Bedminster, New Jersey. **Target Mobile Phone 1** is further described in Attachment A-1, and **Target Mobile Phone 2** is further described in Attachment A-2. The location information to be seized is further described in Attachment B.

8. Because collecting the information authorized by these warrants may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this application is designed to comply with the Pen Register Statute as well as Rule 41. *See* 18 U.S.C. §§ 3121-3127. This affidavit therefore includes all the information required to be included in a pen register order. *See* 18 U.S.C. § 3123(b)(1). Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the FBI and other duly authorized state and local law enforcement officers working under the supervision of the FBI. *See* 18 U.S.C. §§ 3122(b) and 3123(b).

9. Additionally, I submit this affidavit in support of applications for search warrants to determine with precision the location of the **Target Mobile Phones**. The information to be seized and the specific investigative technique, also known as a Cell Site Simulator ("CSS"), is further described in Attachments C-1 and C-2, and D.

10. I am currently investigating the drug and firearms trafficking activities of a large criminal street gang based in Lowell, Massachusetts, the Asian Boyz. This investigation is ongoing, and there are additional gang members and associates who may be charged at a later date. BAGROWSKI is believed to be an associate of the gang and living near Lowell. Therefore, there is reason to believe the **Target Mobile Phones** are currently located somewhere within this district because account records indicate that the phone is registered in this district, and because BAGROWSKI is known to spend most of his time in this district. Pursuant to Rule 41(b)(2), law enforcement may locate the **Target Mobile Phones** outside the district provided the device is within the district when the warrant is issued.

11. Based on the facts set forth in this affidavit, there is probable cause to believe that the location information described in Attachments B and D will assist law enforcement in arresting BAGROWSKI, who is a "person[] to be arrested" within the meaning of Fed. R. Crim. P. 41(c)(4).

12. I submit this affidavit for the limited purpose of establishing probable cause for the requested warrants. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation; facts not presented herein are not relied on as the basis for this request.

## PROBABLE CAUSE

13. On July 26, 2023, a Grand Jury sitting in the District of Massachusetts returned an indictment charging BAGROWSKI with Distribution of and Possession with Intent to Distribute

50 Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii).  Thereafter, as a result of the Grand Jury's return and upon the request of the United States, U.S. Magistrate Judge Donald L. Cabell issued an arrest warrant for BAGROWSKI.  Accordingly, BAGROWSKI is a person to be arrested within the meaning of Fed. R. Crim. P. 41(c)(4).

14. BAGROWSKI is likely to be in possession of the **Target Mobile Phones** for at least two reasons.  First, according to records produced by Verizon, BAGROWSKI is the subscriber of cellular service for the **Target Mobile Phones**.  As such, BAGROWSKI is more likely to be the actual user of the **Target Mobile Phones**, and therefore more likely to be in possession of them.  According to Verizon records, cellular telephone service for **Target Mobile Phone 1** began on June 20, 2017 and is currently active.[1]  Similarly, service for **Target Mobile Phone 2** began on July 23, 2017 and is currently active.  The listed subscriber for both phones – BAGROWSKI – has remained the same during that time.  And the **Target Mobile Phones** are associated in the same Verizon account, account number 587963285-1, registered in BAGROWSKI's name, with the same address that appears on his Massachusetts driver's license (204 Acropolis Road, Lowell, MA), and with a matching e-mail address of "joebag1987@gmail.com".

15. Second, BAGROWSKI is a drug trafficker, and I know that drug traffickers tend to possess multiple phones and keep them on their person, or nearby in an accessible place.  I know from the investigation that BAGROWSKI distributed significant quantities of methamphetamine pills to a Cooperating Witness (hereinafter, "CW-1") in September 2021.  In at least two deals surveilled during the investigation, BAGROWSKI supplied 2,000 pills to CW-

---

[1] All Verizon records set forth in this affidavit are current as of July 12, 2023.

1, believing they were for redistribution, consisting of more than 650 grams of a mixture and substance containing methamphetamine. A Grand Jury has returned an indictment against BAGROWSKI, charging him with a serious drug offense. Therefore, I believe BAGROWSKI is drug trafficker. I know that mobile phones are tools of the drug trafficking trade, and drug traffickers like BAGROWSKI usually have their phones on their person in order to maintain contact with drug customers and suppliers, and they keep information about their drug trafficking activity stored on their phones so it's close at hand.

16. For approximately 18 months, beginning in February 2022, CW-1 has used **Target Mobile Phone 1** to communicate with BAGROWSKI. The most recent phone contact between CW-1 and BAGROWSKI on **Target Mobile Phone 1** occurred on July 4, 2023.

17. Similarly, beginning in September 2021, CW-1 has used and continues to use **Target Mobile Phone 2** to communicate with BAGROWSKI. CW-1 conducted over five consensually recorded phone calls with BAGROWSKI on **Target Mobile Phone 2**, and they have exchanged multiple text messages. The most recent phone contact between CW-1 and BAGROWSKI on **Target Mobile Phone 2** occurred on July 19, 2023.

18. Due to the fact that the **Target Mobile Phone 1** was activated on June 20, 2017 and remains active as of July 9, 2023, according to Verizon records, and has not changed subscribers, I believe that as BAGROWSKI was the user of **Target Mobile Phone 1** in the instances described herein, and BAGROWSKI is still the user of **Target Mobile Phone 1**.

19. Due to the fact that the **Target Mobile Phone 2** was activated on July 24, 2017 and remains active as of July 9, 2023, according to Verizon records, and has not changed subscribers, I believe that as BAGROWSKI was the user of **Target Mobile Phone 2** in the instances described herein, and BAGROWSKI is still the user of **Target Mobile Phone 2**.

20.     Additionally, a query of the Number Portability Administration Center database shows that the **Target Mobile Phones** are still active lines.[2]  Additionally, open source research has revealed that both Target Mobile Phone 1 and Target Mobile Phone 2 appear to be associated with WhatsApp applications that were active as recently as July 26, 2023.[3]

## AUTHORIZATION REQUEST TO SEIZE VERIZON LOCATION INFORMATION FOR TARGET MOBILE PHONES

21.     I know that mobile phone providers have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the mobile phones to which they provide service:  (1) E-911 Phase II data, also known as GPS data or latitude/longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the mobile phone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the mobile telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise than E-911 Phase II data.

22.     Based on the information set forth herein, there is probable cause to believe that BAGROWSKI is the user of the **Target Mobile Phones**, and that location information of **Target**

---

[2] As of July 26, 2023.
[3] To research account associations within WhatsApp for the Target Mobile Phones, a search was conducted using the telephone numbers in the software application.  The results demonstrated that Target Mobile Phones were associated with active accounts on the platform.

**Mobile Phones** in the possession of Verizon will aid law enforcement in the search for and apprehension of BAGROWSKI. Therefore, I request that the Court issue the proposed search warrants for location information as described in Attachment B, pursuant to 18 U.S.C. § 2703(c) and Fed. R. Crim. P. 41. The proposed warrant will function as a pen register order under 18 U.S.C. § 3123.

23. I also request that the Court direct Verizon to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the Target Mobile Phone on Verizon's network, and at such intervals and times as directed by the government. The government will compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

24. I further request that the Court direct Verizon to disclose to the government any information described in Attachment B that is within its possession, custody, or control.

25. I further request that, pursuant to the preclusion of notice provisions of 18 U.S.C. §§ 2703(b)(1)(A) & 2705(b), the Court order Verizon not to notify any person (including the subscribers or customers to whom the materials relate) of the existence of this application, the warrant, or the execution of the warrant, for the earlier of one year from the date of the Court's Order or upon notice by the government within 30 days of the conclusion of its investigation, unless the Court extends such period under 18 U.S.C. § 2705(b)  Verizon may disclose this Order to an attorney for Verizon for the purpose of receiving legal advice. Non-disclosure is appropriate in this case because the Court's Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may

alert the targets to the existence of the investigation. There is accordingly reason to believe that notification of the existence of the Order will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, intimidate potential witnesses, or endanger the life or physical safety of an individual. See 18 U.S.C. § 2705(b).

26. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay any required notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscribers or users of the **Target Mobile Phones** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

27. Finally, I request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Mobile Phones** outside of daytime hours.

## MANNER OF EXECUTION OF INVESTIGATIVE DEVICE

28. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

29. To facilitate execution of this warrant, I seek permission to use an investigative device or devices – a CSS – capable of broadcasting signals that will be received by the **Target Mobile Phones** or receiving signals from nearby cellular devices, including the **Target Mobile Phones**. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the **Target Mobile Phones** and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the **Target Mobile Phones** and use that information to determine the **Target Mobile Phones**' locations, even if located inside a house, apartment, or other building.

30. The CSS may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the **Target Mobile Phones**, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the **Target Mobile Phones**, and law enforcement will limit collection of information from devices other than the **Target Mobile Phones**. To the extent that any information from a cellular device other

than the **Target Mobile Phones** is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the **Target Mobile Phones** from all other cellular devices.

### AUTHORIZATION REQUEST FOR INVESTIGATIVE DEVICE (CSS)

31. Because I believe that there is probable cause to seize location information of **Target Mobile Phones** in an effort to apprehend BAGROWSKI, the user of the **Target Mobile Phones**, I request that the Court issue the proposed search warrants for location information as described in Attachment D, pursuant to Federal Rule of Criminal Procedure 41.

32. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrants to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscribers or users of the **Target Mobile Phones** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

33. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Mobile Phones** outside of daytime hours.

34. I further request that the Court order that all papers in support of these applications, including the affidavit and search warrants, be sealed until further order of the

Court, except that the government may provide the search warrant for the **Target Mobile Phones** to Verizon and that copies of the Court's Orders in full or redacted form may be served on special agents and other investigative and law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the Court's Orders.

35. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

## CONCLUSION

36. For all the foregoing reasons, there is probable cause to believe that the searches described in Attachments A-1 and A-2, and C-1 and C-2, will yield location information, as described in Attachments B and D, for the **Target Mobile Phones**, thereby revealing the whereabouts of BAGROWSKI. Accordingly, this Court should issue the requested warrants to aid law enforcement's efforts to search for and apprehend BAGROWSKI, "a person to be arrested," as authorized by Fed. R. Crim. P. 41(c)(4).

_____
TYLER J. SACKETT
Special Agent
Federal Bureau of Investigation

Signed electronically and sworn
before me by telephone, this 26 day
of July, 2023.

_____
HON. JENNIFER C. BOAL
United States Magistrate Judge
District of Massachusetts